460 A.2d 278

Gerald WILLIAMS, Daniel Banks and Linda Banks, his wife, Appellants,

v.

WEST PENN POWER COMPANY, a corporation, Reimann and Georger, Inc., a corporation, Commercial Services Company, a corporation, Slovenian Hall Association of Broughton, Pennsylvania and John J. Bahr, Alfred J. Bahr and Neil R. Bahr, individually and trading and doing business as Bahr Brothers,

v.

Jerry Lee MILBEE, individually and B & M Roofing Contractors, a partnership; and Daniel Banks.

Superior Court of Pennsylvania.

Argued April 27, 1982.

Filed April 22, 1983.

Petition for Allowance of Appeal Granted Aug. 9, 1983.

Beck, J., concurred in part and dissented in part and filed opinion.

462

Robert Rade Stone, Pittsburgh, for appellants.

John C. Conti, Pittsburgh, submitted a brief on behalf of West Penn, appellee.

David R. Johnson, Pittsburgh, for Reimann and Georger, appellees.

J. Loughren, Pittsburgh, for Commercial Services, appellee.

John E. Hall, Pittsburgh, for Slovenian Hall, appellee.

Dan Cusick, Pittsburgh, for Bahr Brothers, appellee.

Before ROWLEY, BECK and MONTEMURO, JJ.

MONTEMURO, Judge:

In this appeal we are presented with the difficult question of what statute of limitations to apply in an action for breach of warranty brought by a direct purchaser as well as a third party for personal injuries under the Uniform Commercial Code [1] [hereinafter "Code"]. Our consideration of this issue necessarily involves a complicated and somewhat confusing interplay between case law and a literal application of the Code.

B & M Roofing Contractors [hereinafter "B & M"], a partnership, was hired by Bahr Brothers, a general contractor, to perform work at the Slovenian Hall Association of Broughton. On May 19, 1975, Daniel Banks, one of the

1. Act of April 6, 1953, P.L. 3, as amended 12A P.S. § 1–101 et seq. The Act of 1953 was repealed and reincorporated within the framework of Pennsylvania Consolidated Statutes as Title 13, Act of November 1, 1979, P.L. 255, No. 86, 13 Pa.C.S.A. § 1101 et seq.

appellants herein, a partner[2] in B & M, and Gerald Williams, also one of the appellants herein, and an employee of the same, were injured at the Slovenian Hall work site when a ladder platform hoist they were using contacted an electrical power line. B & M had purchased the ladder from the Commercial Services Company. As a consequence of the mishap, both appellants suffered severe electrical burns.

On May 20, 1977, both gentlemen, and Mrs. Banks, in a derivative action based on her husband's injuries, filed a praecipe for writ of summons in trespass. Subsequently, on June 29, 1977, a complaint in trespass and assumpsit was filed against West Penn Power company, the electrical power line supplier, the Bahr Brothers, the Slovenian Hall Association of Broughton, Reimann and Georger, Inc., the ladder manufacturer, and Commercial Services Company, the immediate seller. Specifically, the appellants pled counts in negligence, strict liability under Section 402A, Restatement of Torts 2d[3], and breach of warranty pursuant to 13 Pa.C.S.A. § 2314, § 2315 and § 2318.[4] All of the

2. There are various references on this record indicating that Daniel Banks is a partner in B & M. In any event, none of the appellees contest Mr. Banks' status as a partner and, hence, purchaser of the ladder.

3. § 402A. (1) one who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
    (a) the seller is engaged in the business of selling such a product, and
    (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
    (a) the seller has exercised all possible care in the preparation and sale of his product, and
    (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
Restatement (Second) of Torts, § 402A (1965)

4. § 2314. Implied warranty: merchantability; usage of trade
    (a) Sale by merchant.—Unless excluded or modified (section 2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

above named defendants, appellees herein, filed an answer and new matter alleging that the two-year personal injury statute of limitations [5] barred both causes of action. Shortly thereafter they filed a motion for summary judgment. The lower court granted the motion, finding that although

> (b) Merchantability standards for goods.—Goods to be merchantable must be at least such as:
>> (1) pass without objection in the trade under the contract description;
>> (2) in the case of fungible goods, are of fair average quality within the description;
>> (3) are fit for the ordinary purposes for which such goods are used;
>> (4) run, within the variations permitted by the agreement even kind, quality and quantity within each unit and among all units involved;
>> (5) are adequately contained, packaged, and labeled as the agreement may require; and
>> (6) conform to the promises or affimations of fact made on the container or label if any.
> (c) Course of dealing or usage of trade.—Unless excluded or modified (section 2316) other implied warranties may arise from course of dealing or usage of trade. 1979, Nov. 1, P.L. 255, No. 86, § 1, effective Jan. 1, 1980.
> **§ 2315. Implied warranty: fitness for particular purpose**
> Where the seller at the time of contracting has reason to know:
>> (1) any particular purpose for which the goods are required; and
>> (2) that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods;
> there is unless excluded or modified under section 2316 (relating to exclusion or modification of warranties) an implied warranty that the goods shall be fit for such purpose. 1979, Nov. 1, P.L. 255, No. 86, § 1, effective Jan. 1, 1980.
> **§ 2318. Third party beneficiaries of warranties express or implied.**
> The warranty of a seller whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.
> 1979, Nov. 1, P.L. 255, No. 86, § 1, effective Jan. 1, 1980.

5. Act of June 24, 1895, P.L. 236, § 2, as amended 12 P.S. § 34, was repealed and reenacted by the Act of July 9, 1976, P.L. 586, No. 142, § 2, effective June, 1978, 42 Pa.C.S.A. § 5524(2).

> **§ 5524. Two year limitation**
> The following actions and proceedings must be commenced within two years:
>> (2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.

the appellants filed suit in trespass *and* assumpsit *Salvador v. Atlantic Steel Boiler Company*, 256 Pa.Super. 330, 389 A.2d 1148 (1978), affirmed per curiam, 492 Pa. 258, 424 A.2d 497 (1981), (*Salvador II*) nevertheless mandated the application of the two-year statute. In *Salvador II*, this court held that the two-year statute of limitations applies to a breach of warranty action for third party personal injuries instead of the four-year statute contained in the Code at § 2725(a)[6]. Notwithstanding the fact that the instant case involves a direct purchaser, appellant Banks, as well as a third party, appellant Williams, the lower court found *Salvador II* controlling:

> Although *Salvador* [*II*] does, indeed, deal with an injury to a third party, its rationale and the cases and law review articles relied upon in *Salvador* [II], particularly the writings of Dean Murray, lead to the inescapable conclusion that the four-year statute of limitations is applicable only in those situations where a breach of warranty leads to some economic loss, but is inapplicable where the claim is for personal injury. Where the claim is for personal injury, the Superior Court has made clear that the two-year statute of limitations applies irrespective of whether the Complaint is labeled trespass or assumpsit.

Initially, for the sake of clarity, we shall set forth what is not disputed. First, there is no question that the counts in negligence and strict liability under 402A are barred by the two-year statute. Second, a prerequisite to an action for breach of warranty is that there must be a sale. Clearly, the only "sale" in the instant case was the transaction involving the ladder. As to West Penn Power Company, the Bahr Brothers and the Slovenian Hall Association of Broughton, there was no "sale" and therefore no viable breach of warranty claim. Third, *Salvador II* unequivocal-

6.  **§ 2725.  Statute of limitation in contracts for sale**
     (a) General rule.—An action for breach of any contract for sale must be commenced within four years after the cause of action has occurred. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

ly disposes of Mr. Williams' suit. He is, as an employee of B & M, a third party to the sale of the ladder and, therefore, his breach of warranty action is barred by the two-year statute of limitations. See *Salvador II, supra*. Fourth, Mr. Banks is a direct purchaser only from Commercial Services Company; he is a third party to the sale of the ladder from Reimann and Georger, Inc. to Commercial Services Company. Thus, under *Salvador II*, Mr. Banks' action is likewise barred by the two-year statute of limitations. In sum, what remains is Mr. and Mrs. Banks' breach of warranty claim against Commercial Services Company. It is to this aspect of the lawsuit that we must determine whether the Code's four-year statute or the two-year personal injury statute applies. Specifically, does the rational enunciated in *Salvador II* logically extend to the instant situation where the *direct purchaser* is the injured party?

In *Salvador II*, the plaintiff was injured in May of 1967 when, during the course of his employment at United Machine & Tool Company, a boiler manufactured by Atlantic Steel Boiler Company exploded. As a result, plaintiff, Mr. Salvador, suffered severe bilateral hearing loss. Mr. Salvador, subsequently, on March 29, 1971 filed a writ of summons in assumpsit and trespass against Atlantic Steel Boiler, the S.H. English Company and Walter Mueller and his wife.[7]

The first time on appeal this court abolished the requirement of horizontal privity under § 2318 of the Code, finding *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848, 849 (1968) effectively overruled *Hochgertel v. Canada Dry Corp.*, 409 Pa. 610, 187 A.2d 575 (1963) and permitted Mr. Salvador, as an employee of the purchaser, to maintain a suit for breach of warranty. *Salvador v. Atlantic Steel Boiler Company*, 224 Pa.Super. 377, 307 A.2d 398 (1973). This decision was affirmed by the Supreme Court in an

7. In 1962 the boiler was sold by Atlantic Steel to the S.H. English Company which was owned by the Muellers. In 1964 Mr. Salvador's employer, United Machine, bought the business from the Muellers.

opinion by Mr. Justice Roberts. *Salvador v. Atlantic Steel Boiler Company*, 457 Pa. 24, 319 A.2d 903 (1974).

The case was remanded to the trial court where the defendants argued in their answers and new matter that the appropriate statute of limitations (§ 2725) had expired. There was no dispute that Mr. Salvador's 402A claim was barred by the two-year statute. The only question of viability concerned the breach of warranty claim. The defendants argued that § 2725 began to run from the tender of boiler and thus time had expired prior to the filing of Mr. Salvador's suit. Further, the defendants contended that this was true no matter which sale was considered dispositive, i.e., from the 1962 original sale of the boiler to English, or from 1964, when United purchased English from the Muellers. Mr. Salvador argued that § 2725 did not begin to run until the date of the injury in May of 1967. The trial court agreed with the defendants and granted their motions for summary judgment on both the warranty and tort claims.

Both parties, apparently, conceded that § 2725 was applicable to Mr. Salvador's status as a third party and therefore, the thrust of their arguments were directed solely to the appropriate time at which the cause of action accrued, *i.e.*, the defendants argued for the date of delivery while, Mr. Salvador argued for the date of injury. This court found both arguments unpersuasive and went further, disagreeing that § 2725:

> ... under any construction, should be applied to third party personal injuries arising from a defective product. It is our view that the two-year statute of limitations should be uniformly applied to all such cases, and that the statute should ordinarily begin to run from the date of injury. *Salvador II, supra,* 256 Pa.Superior 335, 389 A.2d at 1151.

For the sake of brevity, the *Salvador II* rationale can be divided into three parts:

1) Toward achieving the desirable goal of legal symmetry, privity had been abolished whether a party sued in

tort or in assumpsit. *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966) (adoption of § 402A of the Restatement of Torts 2d); *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968) (abolition of requirement of vertical privity under § 2318) and *Salvador v. Atlantic Steel Boiler* (Salvador II), *supra* (horizontal privity abolished). In light of this development, the court believed that legal symmetry required the application of the two-year personal injury statute.

2) In order to reach the desired end, *Salvador II* necessarily had to distinguish two prior Supreme Court cases which seemingly held to the contrary. In *Gardiner v. Philadelphia Gas Works*, 413 Pa. 415, 197 A.2d 612 (1964) and *Rufo v. Bastian-Blessing Company*, 417 Pa. 107, 207 A.2d 823 (1965), the Supreme Court found § 2725 applicable to a purchaser's breach of warranty action for personal injuries. *Gardiner, supra,* was distinguished as follows:

> First, the Gardiners were *purchasers* of the natural gas so that they were in privity of contract and would have been entitled to recover for breach of warranty even under the doctrine of *Hochgertel v. Canada Dry Corp., supra.* Second, when *Gardiner, supra,* was decided the Code offered the only remedy for defective products which permitted the use of a strict liability theory, because *Webb v. Zern, supra,* had not been decided. Finally, Section 10–103 of the Code could not have repealed the two-year statute of limitations with respect to third party personal injuries because, as *Hochgertel* would establish, the Code provided no remedy for such injuries, except to the limited extent specifically set forth in Section 2–318. (Emphasis added)

*Rufo, supra,* was distinguished on the same basis:

> ... *the plaintiff was explicitly afforded a remedy under the Uniform Commercial Code as a purchaser of the defective product,* and Pennsylvania had not yet adopted Section 402 A of the Restatement of Torts, 2d or an alternative remedy. (Emphasis added) .

*Salvador II, supra,* 256 Pa.Superior 335, 389 A.2d at 1152–53.

3) The holding itself rested upon three considerations:

a) The remedy under the Code for third parties is entirely one of judicial creation and therefore the courts should decide the appropriate statute of limitations. Since the theory of recovery for personal injuries under § 2318 sounds in tort the personal injury statute of limitations is applicable.

b) It would take a strained interpretation of § 2725 to conclude that it applies to anyone but the contracting parties.

c) Uniformity of application of the two-year statute is the only solution to attain legal symmetry.

We are faced with an extremely difficult proposition. The Code explicitly provides, as *Salvador II* recognizes, for the recovery of consequential personal injury damages as set forth in pertinent part under § 2715:

(b) Consequential damages resulting from the seller's breach includes ...

(2) injury to the person or property proximately resulting from any breach of warranty.

*Salvador II* did not consider the above Code language and the abolishment of privity as controlling. Rather, *Salvador II* emphasized the need for legal symmetry and restated Justice Roberts' observation in *Kassab, supra,* that the caption atop the complaint should not dictate a distinction. Therefore, a suit for personal injuries, whether or not the theory of recovery was based on breach of warranty, negligence, or strict liability should be commenced within the same time period, especially since the adoption of § 402 A of Restatement of Torts, 2d in Pennsylvania. While we commend the result, we do not believe the logic employed therein was meant to or can be extended to the instant situation.

Problematically, the resolution of the issue in the instant case can be stated as follows: On the one hand, if we found that *Salvador II* indeed extended to the situation involving

a direct purchaser, we would be ignoring the explicit and exact language contained in the Code which provides for the recovery of personal injury damages caused by a breach of warranty. There is also no doubt that primarily *Salvador II* distinguished *Gardiner, supra,* and *Rufo, supra,* which applied the four year statute to a breach of warranty action for personal injuries, on the basis that in those cases a direct purchaser was the injured party. On the other hand, if we find *Salvador II*'s rationale inapplicable we will have a very unfair result. Mr. Banks, a direct purchaser, will be permitted to maintain his breach of warranty action; however, Mr. Williams, as a third party, will not. This will be so even though both parties were injured at the same time, at the same place and by the same electrical charge. Obviously, this approach will create *legal asymmetry* within the context of a breach of warranty action in reestablishing privity when applying the appropriate statute of limitations based upon a *right* under the Code which recognizes no such restriction. If a party has the right to initiate a particular cause of action, he should likewise be accorded all that follows.

We can, however, find no way to avoid the explicit provisions contained in § 2715 and § 2725. Both provide a purchaser with a breach of warranty claim against a seller for personal injuries which can be brought within four years. We believe that the Code and § 402A provide alternative remedies. Each remedy should be effectuated by its particular statute of limitations and find dispositive what was stated in *Gardner, supra,* 413 Pa. at 419–20, 197 A.2d at 614:

> In this Commonwealth we have always recognized that a personal injury claim based upon a breach of warranty is a distinct claim from a personal injury claim based on negligence: *Cunningham v. Joseph Horne Co.,* 406 Pa. 1, 176 A.2d 648; *Loch et ux. v. Confair et ux,* 361 Pa. 158, 162, 63 A.2d 24; *Bonenberger v. Pittsburgh Mercantile Co.,* 345 Pa. 559, 561, 28 A.2d 913, 143 A.L.R. 1417. Under such circumstances, a holding that Section 2–725

controls in this instant situation will effect no change in the substantive law of the Commonwealth.

Bearing in mind the language of Sections 2–725, 2–715 and 1–103 and the basic purposes underlying passage of the Code and the need for uniformity in this area of the law, we have no hesitancy in construing Section 2–725 to mean exactly what its language says....

This appeal presents a question of first impression in the appellate courts of this Commonwealth. Our examination of Sections 2–725, 2–715 and 1–103 and the background of the Code indicates that is was the *legislative intent* that there be a four year period of limitations on *all* actions for breach of contracts for sale, *irrespective of whether the damages sought are for personal injuries or otherwise.* (Emphasis added—footnotes omitted)

The adoption of § 402A in Pennsylvania by the Supreme Court did not and could not vitiate what the legislature has provided in the Code and, accordingly, we find that § 2725 applies to a purchaser's breach of warranty action for personal injuries.

We hold, therefore, that § 2725 applies to the Banks' breach of warranty claim. However, there are no facts appearing on this record indicating the date upon which the sale of the ladder occurred. This will have to be resolved before it can be determined that Mr. and Mrs. Banks have filed a timely suit. Mr. Williams' suit for breach of warranty is barred by the two-year personal injury statute because of our holding in *Salvador II,* affirmed per curiam by our Supreme Court.

Order is affirmed in part and reversed in part.

BECK, J., filed a concurring and dissenting opinion.

BECK, Judge, concurring and dissenting:

Preliminarily, I acknowledge the majority's careful and discerning treatment of this complex subject. Additionally, I note that the majority's holding rests upon the preceden-

tial weight of current Pennsylvania cases.* However, I write to highlight the present trend which may be a pattern that should be considered. Having reviewed other jurisdictions' resolution of the relationship between the Code[1] and Section 402A of the Restatement,[2] I am convinced that permitting both third-party beneficiaries and direct purchasers to sue within the Code's four-year statute of limitations is more logically consistent with the Code's express purposes. I, therefore, would remand as to Mr. Williams as well as to Mr. and Mrs. Banks.

As the majority explains, Pennsylvania case law is frought with repeated, if futile, attempts to reconcile decisions pursuant to the Code with pre-Code tort/contract law and with judicial rulings under Section 402A of the Restatement.

Over the years warranty actions metamorphosed dramatically. "[A]t early common law breach of warranty was a trespass action. As such, no privity was required. The later-developed *indebitatus assumpsit* was created as an alternative remedy. The privity requirement was later only applied to assumpsit." *Salvador v. Atlantic Steel Boiler Co. ("Salvador I")*, 457 Pa. 24, 25 n. 1, 319 A.2d 903, 904 n. 1 (1974). Eventually, warranty became a " 'hybrid of both

* Although I fully recognize a panel of the Superior Court cannot overrule either the Superior Court's *en banc* decision in *Salvador v. Atlantic Boiler Co. ("Salvador II")*, 256 Pa.Super.Ct. 330, 389 A.2d 1148 (1978), or the Pennsylvania Supreme Court's per curiam affirmance of *Salvador II* at 492 Pa. 258, 424 A.2d 497 (1981), I write to present what I perceive as not only the better resolution of the instant subject matter but also the method of resolution increasingly preferred in our sister jurisdictions.

1. Uniform Commercial Code ("Code"), Act of April 6, 1953, P.L. 3, *as amended*, 12A P.S. §§ 1–101 *et seq.*, revised and reenacted by the Act of October 2, 1959, P.L. 1023, and transferred by the Act of November 1, 1979, P.L. 255, without substantive change, to 13 Pa.C.S. §§ 1101 *et seq.* "Pennsylvania was the first state to adopt the Uniform Commercial Code ...." *Hochgertel v. Canada Dry Corp.*, 409 Pa. 610, 612, 187 A.2d 575, 577 (1963).

2. Section 402A of the Restatement (Second) of Torts (1965). The Pennsylvania Supreme Court adopted Section 402A of the Restatement in *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966).

tort and contract . . . [and operated] between parties not in privity of contract.'" *Salvador v. Atlantic Boiler Co.* *("Salvador I")*, 224 Pa.Super.Ct. 377, 386, 307 A.2d 398, 403 (1973) (citations omitted), *aff'd*, 457 Pa. 24, 319 A.2d 903 (1974).

Today, the Uniform Commercial Code establishes a *statutory* cause of action for breach of warranty. Nevertheless, courts have been reluctant to relinquish dependence upon common-law tort/contract warranty distinctions. *See, e.g., Salvador v. Atlantic Boiler Co. ("Salvador II")*, 256 Pa.Super.Ct. 330, 389 A.2d 1148 (1978), *aff'd per curiam* [without a published opinion], 492 Pa. 258, 424 A.2d 497 (1981), wherein the Superior Court asserted that the theory of recovery in a strict products liability suit under the Code sounded in tort and accordingly was subject to the two-year statute of limitations on personal injury actions. This hesitancy to function within the statutory framework of the Code has resulted in the very anomaly which the courts have struggled to avoid—legal asymmetry.

At present, if a direct purchaser and his employe are simultaneously injured in a fall from a defective ladder, the direct purchaser will have four years within which to sue for breach of warranty whereas the employe (third-party beneficiary) will have just two years within which to sue for breach of warranty. *Compare Gardiner v. Philadelphia Gas Works*, 413 Pa. 415, 197 A.2d 612 (1964) *with* the Superior Court's analysis in *Salvador II* (*Gardiner* applied the Code's four-year statute of limitations to a direct purchaser's suit for personal injuries while *Salvador II* applied the two-year statute of limitations on personal injury suits to an action brought by an injured employe of a direct purchaser).

I believe that the judicial posture most consistent with the Code's purposes [3] is that articulated by the Supreme Court

**3.** Section 1–102(1) of the Code, 12A P.S. § 1–102(1), states that the Code "shall be liberally construed and applied to promote its underlying purposes and policies." Section 1–102(2) of the Code, 12A P.S. § 1–102(2), lists the Code's purposes and policies as: "(a) to simplify,

of Texas in its well-reasoned opinion, *Garcia v. Texas Instruments, Inc.*, 610 S.W.2d 456 (Tex.1980). Like Pennsylvania, Texas had a two-year statute of limitations on personal injury suits but had also adopted the Uniform Commercial Code which provided a four-year statute of limitations on suits alleging breach of a sales contract. In *Garcia* the Texas Supreme Court utilized the Code's four-year statute of limitations to allow an employe's (*i.e.,* third-party beneficiary's) action for personal injuries arising from a breach of the Code's implied warranty of merchantability. "[A] *statutory cause of action* exists under the Code for personal injuries suffered as [a] result of a breach of implied warranty. The Code provides a *statutory remedy,* hence the traditional distinctions between tort and contract are not relevant." *Id.* at 463 (emphasis added).

However, in *Salvador II* imposition of the two-year personal injury statute of limitations was premised not only upon the historical tort/contract dichotomy but also upon the Superior Court's interpretation of Section 2–725 of the Code. In pertinent part Section 2–725 states:

> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made . . . .

The court opined that "it takes a very strained reading of Section 2–725 to conclude that it was ever meant to apply to persons other than the contracting parties . . . ." *Id.,* 256 Pa.Superior at 341, 389 A.2d at 1154.

clarify and modernize the law governing commercial transactions; (b) to permit the continued expansion of commercial practices . . .; (c) to make uniform the law among the various jurisdictions." Similar provisions now appear in Section 1102 of the Code, 13 Pa.C.S. § 1102. *See Gardiner v. Philadelphia Gas Works,* 413 Pa. 415, 197 A.2d 612 (1964).

To the contrary, I find the wording of Section 2–725 as relevant to third-party beneficiaries as to direct purchasers. The initial sentence of Subsection (1) declares the general rule that an action for breach of a sales contract must be brought within four years from the accrual of the cause of action (defined in Subsection (2) as the occurrence of the breach when tender of delivery of the defective product is made). The precept contains no references to the parties to the sales contract; nor does it otherwise designate persons who may maintain an action.

Admittedly, the second sentence of Subsection (1) does specifically mention the "parties" [4] to the original agreement.[5, 6] But the second sentence simply states that the parties to the original agreement may not (i) restrict the period for asserting an action to less than one year from the date on which the cause of action accrued or (ii) expand the statute of limitations to a period exceeding four years. Thus, the second sentence of Subsection (1) is similar in scope and intent to the second sentence of Section 2–318 (the rights of third-party beneficiaries) which provides that "[a] seller may not exclude or limit the operation of [Section 2–318]." Both "second sentences" acknowledge that as the contracting parties, only the seller and the direct buyer can negotiate the terms of the sales contract delimiting the available warranties and remedies for breach of warranty.

The necessity for this interdictory language is explained by Comment 1 [7] to Section 2–318:

To the extent that the contract of sale contains provisions under which warranties are excluded or modified, or

4. Section 1–201 of the Code defines the word "party" as being different from the expression "third party" and as signifying "a person who has engaged in a transaction or made an agreement within this title [i.e., Code]."

5. Section 1–201 of the Code defines the word "agreement" to include a contract of sale.

6. See footnote 10, infra.

7. See Kassab v. Central Soya, 432 Pa. 217, 232–33, 246 A.2d 848, 855–56 (1968), on the use of the comments to the Code.

remedies for breach are limited, such provisions are equally operative against [third-party] beneficiaries of warranties .... What ... [the second] sentence [of Section 2–318] forbids is exclusion of liability by the seller to the persons [*i.e.*, third party beneficiaries] to whom the warranties which he has made to his buyer would extend under this section.

Therefore, the applicability of the general rule allowing four years for the commencement of an action is not limited by the second sentence of Subsection (1) solely to actions brought by direct purchasers.

As the Superior Court observed in *Salvador II,* "Section 2–725[ (2) ] also states that the cause of action accrues when the breach occurs, 'regardless of the aggrieved party's lack of knowledge of the breach.' [And] ... [Section 1–201 of] the Code defines an aggrieved party as anyone entitled to a remedy." *Id.,* 256 Pa.Superior at 342, 389 A.2d at 1155.

Construing Subsection (2) according to the facts before the court, in *Salvador II,* the Superior Court argued that "[i]t ... [could] not be said ... that Mr. Salvador [third-party beneficiary employed by a direct purchaser] was an aggrieved party on the date delivery of the boiler was tendered to his employer; at that time Mr. Salvador was not entitled to a remedy [because he had not yet incurred damages]." *Id.,* 256 Pa.Superior at 342, 389 A.2d at 1155. Consequently, the court determined that Section 2–275 was not intended to cover actions by third-party beneficiaries.

However, a reading of Subsection (2) does not compel the court's conclusion in *Salvador II* that only a person who suffers damages upon tender of delivery of a defective product can obtain relief pursuant to Section 2–725 of the Code.[8] While the Code defines an aggrieved person as anyone entitled to a remedy, the Code does not place time constraints, other than those of Subsection (1), on a person's ability to qualify for a remedy. The rule proclaimed in

8. *See Johnson v. Hockessin Tractor, Inc.,* 420 A.2d 154 (Del.Super.Ct. 1980) and cases cited therein; *Garcia v. Texas Instruments, Inc.,* 610 S.W.2d 456 (Tex.1980) and cases cited therein.

Subsection (2) is merely that whether a product contains a patent or a latent defect, the period stipulated under Subsection (1) for filing a warranty action begins to run upon the seller's tender of delivery of the defective product to the direct buyer.

In his article "Products Liability—Another Word" [9] John E. Murray, Jr., points to the case of *Mendel v. Pittsburgh Plate Glass Co.*, 25 N.Y.2d 340, 305 N.Y.S.2d 490, 253 N.E.2d 207 (1969), *overruled, Victorson v. Bock Laundry Machine Co.*, 37 N.Y.2d 395, 373 N.Y.S.2d 39, 335 N.E.2d 275 (1975), as an example of the absurd result supposedly required by including third-party beneficiaries in the class of persons covered by Section 2–725 (four-year statute of limitations) of the Code. In *Mendel* the New York Court of Appeals applied the Code's four-year statute of limitations to bar the action of a non-purchaser who was injured seven years after the defective product was delivered and installed. According to the *Mendel* approach, the third-party beneficiary's suit was precluded by the running of the Code's four-year period *before* the third-party's cause of action arose (*i.e.*, the third-party beneficiary's injury occurred *seven years after delivery to the buyer*).

But the *Mendel* result is not mandated in Pennsylvania. In Pennsylvania the Uniform Commercial Code and Section 402A of the Restatement (Second) of Torts afford *alternative*—not identical—causes of action in strict products liability. *Salvador II; accord, Garcia; Redfield v. Mead, Johnson & Co.*, 266 Or. 273, 512 P.2d 776 (1973); *see, e.g., Demise of Horizontal Privity on Pennsylvania Breach of Warranty Actions*, 48 Temple L.Q. 807 (1975); *The Tocsin Has Sounded: A Post-Mortem Examination of Privity of Warranty in Pennsylvania*, 13 Duquesne L.Rev. 53 (1974–75); Speidel, *The Virginia "Anti-Privity" Statute: Strict Products Liability under the Uniform Commercial Code*, 51 Va.L.Rev. 804 (1965).

9. 35 U.Pitt.L.Rev. 255 (1973–74).

A few examples will demonstrate the disparity between the Code and Section 402A. While the Code comprises a comprehensive statutory scheme, Section 402A of the Restatement is a special exception carved from the extant body of tort law. Section 2–607 of the Code debars a remedy for the purchaser where the purchaser has failed to notify the seller of a breach within a reasonable time after the purchaser has discovered, or should have discovered, the breach.[10] Section 402A of the Restatement does not contain a similar notice provision. *See* Comment *m* to Section 402A of the Restatement. Several Code sections permit the exclusion or modification of warranties and remedies. *See, e.g.,* Sections 2–314, 2–316, 2–718, and 2–719; *see also* Comment 1 to Section 2–318. Section 402A of the Restatement does not allow disclaimers except to the extent that appropriate warnings or instructions in the use of a product may reduce a seller's liability. *See* Comment *j* to Section 402A of the Restatement.

Thus, since the Code and Section 402A of the Restatement are not coterminous [11], a third-party beneficiary should be able to maintain an action under Section 402A within two years of the date on which he suffered an injury or should have discovered his injury, *see, e.g., Bickell v. Stein*, 291 Pa.Super.Ct. 145, 435 A.2d 610 (1981), or under the Code's statutory framework within four years of tender of delivery

**10.** Although the wording of Section 2–607 unmistakably links the notice requirement to the time of the buyer's acceptance of the seller's goods, Comment 5 to section 2–607 explains that the notice requirement nevertheless applies to third-party beneficiaries despite the third parties' uninvolvement with acceptance of the goods. Comment 5 states that the third parties should notify the seller within a reasonable time after an injury has occurred. *Compare* language of Section 2–607 *with* language of Section 2–725(2).

**11.** As previously stated, efforts to make the Code coextensive with Section 402A of the Restatement do not avoid legal asymmetry. Under the reasoning of *Salvador v. Atlantic Steel Boiler Co. ("Salvador II")*, 256 Pa.Super.Ct. 330, 389 A.2d 1148 (1978), *aff'd per curiam* [without a published opinion], 492 Pa. 258, 424 A.2d 497 (1981), a direct purchaser and a third-party beneficiary who are simultaneously injured in the same incident have different periods within which to assert their claims.

of the defective product to the direct buyer.[12]   *Peeke v. Penn Central Transportation Co.*, 403 F.Supp. 70 (E.D.Pa. 1975), *aff'd* [without a published opinion], 538 F.2d 320 (3rd Cir.1976); *accord, Garcia.*

I therefore, would remand as to Mr. Williams as well as to Mr. and Mrs. Banks.

**12.**  Denying third-party suits under the Code's statute of limitations while permitting direct purchasers' suits under the Code's statute of limitations suggests a return to restrictive privity concepts now in disrepute in this Commonwealth.  *Salvador v. Atlantic Steel Boiler Co. ("Salvador I"),* 224 Pa.Super.Ct. 377, 307 A.2d 398 (1973), *aff'd,* 457 Pa. 24, 319 A.2d 903 (1974); *Kassab.*